Hudson *v.* Houser, Administrator.

Filed April 11, 1890.

---

No. 12,859.

## HUDSON *v.* HOUSER, ADMINISTRATOR.

PRACTICE.—*Motion to Strike Out Part of Complaint.—Overruling of.*—Overruling a motion to strike out parts of a complaint is not an available error.

NEGLIGENCE.—*Death by Wrongful Act.—Action by Administrator.—Defendant not Competent Witness.—Statute Construed.*—In an action by an administrator to recover damages on account of the death of his decedent, caused by the wrongful act of the defendant in carelessly allowing his team in charge of his servant to run off and over the decedent, who at the time was in his buggy in the public highway, the defendant is not

a competent witness as to matters which occurred during the lifetime of the deceased. Section 498, R. S. 1881.

SAME.—*Driver and Owner of Team.—Reputation of as to Carefulness.—Rebutting Evidence.*—In such action, the defendant having first introduced evidence of his own and his servant's carefulness and capacity in the management of horses, and their reputation as business men, evidence was admissible in rebuttal to show that the driver was a person of intemperate habits.

SAME.—*Household Expenses.—Evidence as to.—Admissibility of to Show Loss by Death of Decedent.*—The testimony of the decedent's daughter, who kept the expense account of the family as to the household and living expenses of the family for several years, was competent as tending to show the loss sustained by the decedent's family because of his death.

SAME.—*Instructions to Jury.*—An instruction requested, to the effect that if the evidence established a certain state of facts, those facts, standing alone, did not constitute such negligence as to render the appellant liable, is properly refused.

INTERROGATORIES TO JURY.—*Additional Answers.—Refusal of Court to Require.*—The refusal of the court to require the jury to retire and make further answers to the interrogatories to which they answered " no evidence," is not an available error.

INSTRUCTIONS TO JURY.— *Refusal of Instructions Requested.*— Where the court has fully instructed the jury, instructions asked, whether correct or not, covering the same ground, are properly refused.

From the Elkhart Circuit Court.

*O. L. Ballou, J. D. Ferrall, J. H. Baker, J. H. Defrees, Jr.,* and *F. E. Baker,* for appellant.

*A. A. Chapin, R. M. Johnson* and *W. L. Penfield,* for appellee.

BERKSHIRE, J.—This was an action by the appellee, who was the plaintiff below, to recover damages on account of the alleged negligence of the appellant resulting in the death of the decedent.

The facts alleged in the complaint are, in brief, that, on the 17th day of September, 1884, while said decedent was driving along a public highway with a horse hitched to a covered buggy, in which the deceased was seated, a team of the appellant hitched to a heavy logging wagon, in charge of one Samuel Johnson, his servant, was carelessly allowed

to run off, and ran over and upon the decedent, who was without fault, thereby mortally wounding him, and from the injuries thus received he in a few days thereafter died, leaving a widow and five children, and judgment is demanded for $10,000.

Among other allegations in the complaint to which our attention is particularly called by a motion to strike the same therefrom, are the following: "And, besides, they have been made to suffer and have suffered great expense, in the sum of $300 for medical attendance and nursing of the decedent after said injuries caused thereby, and in defraying his funeral expenses after his said death, which they have been compelled to pay out of the assets of said estate."

The motion to strike out was overruled, and the appellant saved an exception.

The appellant next filed a demurrer to the complaint, which was overruled, and he reserved an exception, after which the cause was put at issue by the filing of an answer in general denial.

The cause being at issue was submitted to a jury for trial, who thereafter returned a verdict for the appellee in the sum of $2,000, and also returned with their general verdict certain interrogatories propounded by the parties respectively, with their answers thereto.

After the return of the verdict and interrogatories the appellant moved the court to require the jury to make different answers to certain of the interrogatories, to which the jury gave the following answers: "No evidence."

The court overruled the motion, and the appellant reserved an exception.

The appellant thereupon filed a motion for a new trial, which the court overruled, and he excepted, after which the court rendered judgment for the appellee.

Thirty days' time was given to the appellant in which to file a bill of exceptions containing the evidence, and he filed

his bill of exceptions, properly signed by the judge who presided at the trial, within the time given.

The following are the errors assigned in this court:

"*First.* The court erred in overruling appellant's motion to strike out parts of the complaint.

"*Second.* The court erred in overruling appellant's demurrer to the complaint.

"*Third.* The court erred in overruling appellant's motion for a new trial."

There is no available error because of the ruling of the court overruling the motion to strike out parts of the complaint, as has been held by this court over and over again. *Ætna Ins. Co.* v. *Deming, post,* p. 384. But if it would have been reversible error to overrule the motion had the appellee offered and introduced evidence to maintain the allegations to which the appellant's motion referred, as no such testimony was introduced or offered, the appellant could not have been prejudiced by the ruling of the court.

The second assigned error is not discussed by appellant's counsel, and is for that reason waived.

The only remaining error for our consideration is the third—the overruling of the motion for a new trial.

Several causes are alleged in the motion for a new trial, but as counsel do not urge all of them we shall only consider those that are urged.

The tenth reason alleged in the motion is that the court erred in refusing to allow the appellant to testify generally in his own behalf.

Section 498, R. S. 1881, enacts: " In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not

be a competent witness as to such matters against such estate."

The case before us falls clearly within the letter of this statute. The suit is brought in the name of an administrator, and involves matters which occurred during the lifetime of the decedent.

The judgment recovered is a judgment in favor of the estate. It could not be otherwise. It is only in his trust capacity that the administrator can bring and maintain the action, and necessarily the judgment, when recovered, must be for the estate.

If the appellant had failed in the action there would have been a judgment against him for costs, payable in due course of administration. Sections 590, 2291, R. S. 1881. But not only does the case fall within the letter of the statute, but clearly within its spirit.

We have no recollection of any case where this court has held that a party incompetent because within the letter of the statute was competent within the spirit of the statute, but we have a number of cases where the reverse of this has been ruled.

The reason for this is well stated in *Malady* v. *McEnary*, 30 Ind. 273 : "After a careful consideration of the question we have come to the conclusion that the appellant was not a competent witness on his own behalf as to matters occurring during the lifetime of Ann Malady. The evident intent was, in suits by or against heirs, to exclude the testimony of the parties to the action as to any matters which occurred prior to the death of the ancestor, so as to prevent the living from testifying against the representative of the dead. *Death having sealed the lips of the one, the law seals the lips of the other.*"

It is true that the judgment, when recovered, enures to the benefit of the heirs of the decedent regardless of the rights of creditors, but this affords no sufficient reason why the

plain letter of the statute (section 498, *supra*) should be disregarded.

Section 284, R. S. 1881, which is the section which saves the right of action, and authorizes the recovery in the name of the legal representative, expressly provides that the damages recovered shall enure first to the widow and children of the decedent, and next to his next of kin, and be distributed in the same manner as the personal property of the deceased. Distributed how? By the administrator in due course of administration.

The reason of the rule which the said section 498 prescribes, is as strong in the class of cases to which the one before us belongs as in any case to which an administrator is a party.

What good reason can be offered (as suggested by counsel for the appellee) why section 498, *supra*, should operate to exclude the appellant as a witness in an action by the administrator against him to recover the value of the buggy in which the deceased was riding, and the worth of the horse which he was driving when the misfortune overtook him, and the statute ignored, and the appellant allowed to testify in the more important action involving the most terrible loss that can befall a family, the death of the husband and father to whom the members thereof must look for care and support.

We apprehend that a satisfactory answer can not be given to the foregoing inquiry. *Ketcham* v. *Hill*, 42 Ind. 64.

In *Durham* v. *Shannon*, 116 Ind. 403, the court said: " The evident purpose of the section under consideration (section 498) was to protect the estates of deceased persons from apprehended danger of permitting the surviving party to a contract or transaction to testify in respect to it, after the lips of the other party had been closed by death. Hence a party to a transaction involved in the issue on trial is put under a statutory disability, and is excluded from testifying, when the other party to the same matter is disabled by death,

and where he is represented in the action which involves such contract or transaction by an executor or administrator, or some one who, in legal contemplation, stands in his place, and when the judgment to be rendered may affect his estate *either directly or indirectly.*"

What is there said, we think, covers the question under consideration.

In *Jeffersonville, etc., R. R. Co.* v. *Swayne,* 26 Ind. 477, it was held by this court that an administrator must be appointed in the manner provided in the act for the settlement of decedents' estates, if a domestic administrator, to enable him to maintain an action belonging to the class to which the one under consideration belongs. He is, therefore, none the less an administrator in prosecuting an action of this kind than in prosecuting any other action which the law requires him to prosecute in his fiduciary capacity.

The 19th, 20th, 21st, 22d, and 23d reasons for a new trial relate to testimony which the court allowed the appellee to introduce, as to the reputation of Samuel Johnson, the appellant's teamster, and in charge of the team when the accident occurred, for sobriety.

The appellant objected to the testimony, on the grounds (1) that the testimony was incompetent at any stage of the trial; and (2) if competent for any purpose it should have been introduced in chief, and not in rebuttal.

It appears from the record that the court permitted the appellant to introduce testimony as follows:

Question. "I will ask you if from your acquaintance with Samuel Johnson, he is a careful and prudent man; ordinarily careful and prudent in the management of teams, and in the transaction of business?"

Answer. "So far as I have seen it would be so to my judgment."

Question. "You may state during your acquaintance during the last eighteen years with Mr. Hudson, if you ever observed him in the management of teams and business so as

to form a judgment as to the kind of man he is with reference to being a careful and prudent man in such matters or otherwise ?"

Answer. " I would say *yes.*"

From the form of the last question, and the answer made by the witness, we understand him as intending to answer that the appellant was a careful and prudent man, and think the jury must have so understood him.

Until this evidence was introduced there was no evidence before the jury tending to show the reputation of Johnson as a teamster and business man; nor the reputation which the appellant possessed as a business man, and in the management of teams of horses.

This class of testimony was brought into the case for the first time by the appellant. Whether competent or not the court permitted its introduction over the objection of the appellee, and hence it was the right of the appellee to rebut it.

If the appellee could show that Johnson was in fact, or had the reputation of being, a person of intemperate habits, in our opinion it tended to rebut the testimony of the appellant to which we have called attention, and properly so.

Evidence tending to show that a person has the habit of intemperance tends to show his want of capacity in the management of business, and especially as a teamster, having charge of wild and fractious horses. And if Johnson had the reputation of being a person who was in the habit of becoming intoxicated, evidence of that fact tended to show that the appellee in keeping him in his service was not a careful and prudent man.

The twelfth and thirteenth reasons alleged in the motion for a new trial relate to the testimony of Miss Hattie Houser.

She was permitted to state, over the objection of the appellant, the household and living expenses of her father's family per year for several years. She had testified as to having kept the expense account of the family, and the court

permitted her to state from the knowledge she had gained because of having kept this expense account what in her opinion the expenses of the family were during the years 1881, 1882 and 1884.

We think this testimony was competent. It tended to show the loss sustained by the decedent's family because of his death. *Mayhew* v. *Burns,* 103 Ind. 328, and cases cited.

The ninth alleged cause for a new trial is the refusal of the court to require the jury to retire and make further answers to the interrogatories to which they answered " No evidence."

We think there is no available error in this ruling, for the reason that if the jury had returned answers to the said interrogatories most satisfactory to the appellant, in view of the rule as declared in *Grand Rapids, etc., R. R. Co.* v. *Ellison,* 117 Ind. 234, the result would not have been different. See *McCormick, etc., Co.* v. *Gray,* 100 Ind. 285 ; *Chicago, etc., R. R. Co.* v. *Hedges,* 105 Ind. 398.

The sixth assigned cause for a new trial rests upon the court's refusal to give certain instructions tendered by the appellant.

The instructions which the court refused to give to which our attention has been directed are Nos. 5, 6, 7, 9 and 10. The first three named are set out in counsel's brief, and are as follows :

" 5th. If decedent knew defendant's team was running away and pursuing him, and after he knew that fact, by the exercise of ordinary care and diligence, under the circumstances, he could have turned out of the road, or with reasonable safety to himself have alighted from his carriage and avoided the injury, the plaintiff can not recover.

" 6th. If the jury believe from the evidence that defendant's servant left the team of defendant standing by the side of the highway in the country, and went from where the said team stood, a distance of ten or twelve feet, to a well to get . a drink of water, and if while said servant was getting said

drink of water, said team ran away, and in so doing ran over and upon decedent and injured him, causing his death, that fact alone is not such negligence as would make the defendant liable in this action.

"7th. If the decedent knew that he was being pursued by the defendant's runaway team on the highway, and if by the use of such care and diligence as a reasonably prudent man would have used under the circumstances, he could have turned his horse and carriage out of the way of said runaway team, or if by alighting from his carriage he could, with reasonable safety to himself, have avoided the injury, and failed so to do, and remained in the highway and undertook to outrun said team, and if after ascertaining that he could not outrun said team, he undertook to drive in front of said team to a given point ahead before turning out, in order to save himself, horse and buggy from injury, and if while endeavoring so to do, he was overtaken by said team and injured, then decedent was guilty of contributory negligence, and the plaintiff is not entitled to recover."

The other two are as follows:

"9th. The law requires care at all times when in a situation of known danger, and mental absorption or reverie from business, grief, etc., will not excuse its omission. The inquiry is, from the evidence, whether it satisfactorily appears that the decedent, by the exercise of his faculties of hearing and sight, could have seen the team in time by the exercise of ordinary care and prudence to have avoided the collision. If so the plaintiff can not recover.

"10. If the plaintiff is entitled to recover anything in this action he is only entitled to recover the actual pecuniary value of Samuel Houser's life, and if you shall find under the instructions the court has given you, and under the facts, that the plaintiff may recover, then the next question would be what amount of damages the plaintiff would be entitled to? And, as I have said, the action is brought to recover the

pecuniary loss which has been sustained in dollars and cents, nothing more, nothing less, nothing for sorrow or grief which has been occasioned by the death of the person, nothing for the loss of society or companionship. In making such estimate you should take into consideration the avocation or business in which he was engaged, or any avocation he was capable of following to make or earn money or property, and if up to the time of his death he had accumulated little or no more property than a living; you should also consider the probability of his living beyond a period when he would be incapable of producing or earning a living for himself or himself and family; and though he may have been a man of average constitution and health for a man of his time of life, yet his life was uncertain, he might live a few years and be capable of earning and accumulating property; he might be sick or well; these things depend upon the accidents and contingencies of human life and providence at this period in life, and perhaps all you can do in relation to them is to use your own experience and observation, with such light as the evidence may reflect on the subject, and approximate as nearly as you can the pecuniary loss."

We do not care to enlarge this opinion by setting out the instructions given by the court, as they are somewhat lengthy. It is sufficient to say that they cover all phases of the case covered by the refused instructions, and were eminently fair to the appellant; indeed, the appellant does not complain of the instructions given.

We do not care to analyze the appellant's said instructions numbered 5, 7 and 9, with a view to ascertaining whether they contain a correct statement of the law or not, for the reason that if found correct there would be no available error in refusing to read them to the jury, because the court having covered the ground with its own instructions, this was all the appellant could ask. But as to the propriety of said instructions, see *Pennsylvania Co.* v. *Stegemeier,* 118 Ind.

305, and cases cited ; *Duame* v. *Chicago, etc., R. W. Co.,* 72 Wis. 523 (7 Am. St. Rep. 879, 882).

By the sixth instruction the court was requested to charge the jury that if the evidence established a certain state of facts, those facts, standing alone, did not constitute such negligence as to render the appellant liable.

This instruction was properly refused for two reasons—it ignored the evidence of other facts, and was calculated to mislead the jury.

In *East Line, etc., R. R. Co.* v. *Scott,* 71 Texas, 703 (10 Am. St. Rep. 804), it is held that where there is testimony of several facts from which negligence may be inferred, it is not error to refuse an instruction pointing out one single fact in evidence as insufficient to prove negligence.

The second reason is that, under the evidence in the case, the question of negligence was a question of fact for the jury. See *City R. W. Co.* v. *Lee,* 50 N. J. L. 435 (7 Am. St. Rep. 798, and note) ; *Pittsburgh, etc., R. W. Co.* v. *Wright,* 80 Ind. 236 ; *Ramsey* v. *Rushville, etc., G. R. Co.,* 81 Ind. 394 ; *Town of Albion* v. *Hetrick,* 90 Ind. 545 ; *Indiana Car Co.* v. *Parker,* 100 Ind. 181 ; *Chicago, etc., R. R. Co.* v. *Hedges, supra ; Woolery* v. *Louisville, etc., R. W. Co.,* 107 Ind. 381 ; *Evansville, etc., R. W. Co.* v. *Harrington,* 82 Ind. 534.

The tenth instruction related to the question of damages. So many reasons might be stated why this instruction was properly refused that we do not feel called upon to point them out.

The instructions of the court upon the elements of damages were sufficiently full and specific, hence the court was not bound to give the instruction asked by the appellant, even were it unobjectionable.

We have examined the evidence in the record. It is ample to sustain the verdict, and in view of the loss which the widow and children of the decedent sustained because of his death, the appellant certainly has no reason to complain that the verdict assessed excessive damages.

We find no error in the record.

Judgment affirmed, with costs.

MITCHELL, C. J., took no part in the consideration of this case.

Filed April 12, 1890.